# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SALVADOR MONTOYA,

        Plaintiff,

vs.

BRANDON R. BASS, *et al.*,

        Defendants.

Case No.: 2:20-cv-01003-GMN-VCF

**ORDER**

Pending before the Court is Plaintiff Salvador Montoya's ("Plaintiff's") Motion to Expedite Trial, (ECF No. 26). Defendant Brandon Bass ("Defendant") filed a Response, (ECF No. 29), and Plaintiff filed a Reply, (ECF No. 30).

Also pending before the Court is Defendant's Motion for Summary Judgment, (ECF No. 27). Plaintiff filed a Response, (ECF No. 31), and Defendant filed a Reply, (ECF No. 33).

Also pending before the Court is Plaintiff's Motion to Shorten Time for the Court to Hear the above-described Motions, (ECF No. 38). Defendant filed a Response, indicating his non-opposition to the Motion, (ECF No. 39), and Plaintiff's reply deadline has not yet passed.

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment, **GRANTS in part** and **DENIES in part** the Motion to Expedite Trial, and **DENIES as moot** the Motion to Shorten Time.

## I. BACKGROUND

This case arises from injuries Plaintiff sustained when Henderson Police Department officers apprehended Plaintiff for suspected driving under the influence. (*See generally* Compl., ECF No. 1). On July 6, 2018, a concerned citizen, Joshua Harvey ("Harvey"), dialed 911 when he observed Plaintiff driving erratically on a public road. (*See* 911 Calls, Exs. F-1, F-2 to Mot. Summ. J. ("MSJ"), ECF No. 27-6). On the call, Harvey reported that he suspected Plaintiff of

driving under the influence. (First 911 Call Recording 0:35–40, 2:20–32, Ex. F-1 to MSJ). Harvey followed Plaintiff until Plaintiff ultimately parked in a Walmart parking lot. (*Id.* 1:17–20); (Second 911 Call Recording 0:14–30, Ex. F-2 to MSJ). While police officers were on their way and Harvey remained on the line with the 911 dispatcher, Harvey confronted Plaintiff. (*Id.*). Harvey reported that Plaintiff was agitated and may have a weapon, that Plaintiff was reaching around himself when Harvey confronted him, but Harvey was unsure whether Plaintiff had a weapon. (*Id.* 0:38–1:17, 2:47–3:02). The 911 dispatcher's notes reflect both the reported possible weapon, and that Harvey was unsure whether Plaintiff actually had a weapon. (*See* CAD Notes, Ex. B. to MSJ, ECF No. 27-2).

Armed with the information from the dispatcher, Henderson Police Department officers arrived outside Plaintiff's vehicle in the parking lot. (Officer Bass Dash Cam Video 1:50–52, Ex. F-3 to MSJ, ECF No. 27-6). Defendant approached Plaintiff's vehicle without running a criminal history report, feeling that one was not needed; he reportedly did not treat the stop similarly to a potentially dangerous felony stop where a weapon may be involved. (Bass Dep. 44:16–45:25, 50:13–52:5, Ex. 3 to Pl.'s MSJ Resp., ECF No. 37-3). Officer DeAngelis also approached Plaintiff's vehicle. (Officer Bass Dash Cam Video 1:51–53). Defendant ordered Plaintiff to roll his window down. (*Id.* 1:50–52). Plaintiff cracked his door open, and Defendant directed Plaintiff to stay in the car and roll his window down. (*Id.* 1:54–1:58). Plaintiff then tried to communicate with Defendant with his door closed and window rolled up, prompting Defendant again to direct Plaintiff to roll the window down and to announce that he was with the Henderson Police Department. (*Id.* 1:59–2:10). Plaintiff then rolled his window down a bit, responded to Defendant's question, "what's going on tonight," but the subsequent audio from the dash camera is difficult to comprehend. (*Id.* 2:11–26). However, the video shows that Plaintiff remained agitated. (*Id.*). Officer DeAngelis then directed Defendant to get Plaintiff out of the car. (*Id.* 2:24–25). Defendant subsequently ordered Plaintiff to exit his

vehicle, at which point a third officer came to the vehicle. (*Id.* 2:28–29). Plaintiff did not immediately comply, and Defendant again ordered him to take his seatbelt off and exit the car; Defendant simultaneously opened Plaintiff's driver-side door. (*Id.* 2:30–41).

After Defendant opened Plaintiff's door, Plaintiff put one foot outside his vehicle and began to exit. (*Id.* 2:42–43). However, Plaintiff had his cell phone in his hand, and Defendant ordered Plaintiff to "put your stuff down." (*Id.* 2:44–46). Defendant leaned back in his chair and raised his hands, showing that he was holding only his cell phone. (*Id.* 2:46–48). Defendant then grabbed Plaintiff's cellphone out of Plaintiff's hand, tossed it on the passenger seat, and yanked Plaintiff out of the vehicle by his left arm. (*Id.* 2:49–51). Plaintiff then attempted to grab hold of an adjacent shopping cart corral with his right hand, prompting a second officer to grip Plaintiff under his right shoulder as both officers removed him from the corral and pinned Plaintiff to the hood of a police vehicle before placing him in handcuffs. (*Id.* 2:52–3:11). After being apprehended, Plaintiff failed a field sobriety test but passed a breathalyzer test. (*See* Incident Report, Ex. A to MSJ, ECF No. 27-1). Plaintiff was ultimately cited for obstructing a public officer. (*Id.*).

Plaintiff contends that the officer's use of force in effecting his detention completely tore his left rotator cuff and caused other injuries. (Dr. Trainor Expert Report, Ex. 5 to Pl.'s MSJ Resp, ECF No. 31-5). He originally initiated his Complaint against the Henderson Police Department and the other officers at the scene. (*See* Compl. ECF No. 1). Ultimately, Plaintiff stipulated to dismiss his claims against the Department and all officers other than the remaining Defendant. (Order Granting Stip. Dismiss, ECF No. 23). Defendant now moves for summary judgment on all of Plaintiff's claims. (*See* MSJ, ECF No. 27).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiff argues that Defendant used excessive force against him in violation of his Fourth Amendment right to be free from unreasonable seizure. (Compl. ¶¶ 18, 22–26, 32–49). Plaintiff also argues that the application of force constitutes a battery under Nevada law. (*Id.* ¶¶ 66–82).[1]

---

[1] In the Complaint, Plaintiff pleads the following state law causes of action against Defendant: battery, assault, intentional infliction of emotional distress ("IIED"), and negligence. (Compl. ¶¶ 66–107). In his Response to Defendant's Motion for Summary Judgment, Plaintiff agrees to dismiss his assault, negligence, and IIED claims, but he expressly retains his battery claim. (Pl.'s MSJ Resp. 23:4–24). Pursuant to Plaintiff's abandonment of the assault, negligence, and IIED claims, the Court **DISMISSES** the claims. Therefore, with respect to Nevada law, this Order addresses only Plaintiff's battery claim.

### A. Fourth Amendment

Plaintiff contends that Defendant violated his Fourth Amendment right to be free from unreasonable seizure by applying such significant force during his apprehension that Defendant tore Plaintiff's left rotator cuff. (*Id.* ¶¶ 32–49). Defendant moves for summary judgment, arguing that he used an objectively reasonable amount of force, and he is otherwise entitled to qualified immunity. (Def.'s Mot. Summ. J. ("MSJ") 12:26–22:22, ECF No. 27). The Court first assesses the reasonability of the force used before discussing qualified immunity.

#### i. Reasonability of Force Used

Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "In assessing the objective reasonableness of a particular use of force, we consider: (1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc) (quoting *Glenn v. Wash. Cty.*, 673 F.3d 864, 871 (9th Cir. 2011)). The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Graham*, 490 U.S. at 396–97.

The reasonableness determination in a Fourth Amendment excessive force cause of action is generally reserved to the jury. *Paiva v. City of Reno*, 939 F. Supp. 1474, 1485 (D. Nev. 1996). However, on a motion for summary judgment, a court may grant the motion when, in viewing the evidence in the light most favorable to the nonmoving party, the force used appears reasonable. *See id.* (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). Courts

do not weigh evidence on summary judgment, but examine the state of the evidence to determine whether there remain genuine issues of fact, material to resolving the issue. *Id.*

### 1. Severity of the Intrusion

The Court first assesses, "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (quoting *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "[I]f the extent of the injury . . . is serious enough, a jury could conclude that [the officer] used force in excess of what was reasonable, even if [the plaintiff] had been resisting at the time." *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant employed a moderate amount of force. Defendant allegedly employed such significant force in apprehending Plaintiff that Plaintiff sustained a complete tear of his left rotator cuff. (*See* Montoya Dep 39:1–40:8, Ex. 4 to Pl.'s MSJ Resp., ECF No. 31-4) (indicating that Plaintiff first felt shoulder pain when Defendant yanked him from his vehicle); (Dr. Trainor Expert Report, Ex. 5 to Pl.'s MSJ Resp., ECF No. 31-5) (indicating that Plaintiff's rotator cuff was completely torn, and Defendant "violently pull[ing] Mr. Montoya from his vehicle by his left arm and twist[ing] his left arm behind his back" likely caused the injury); (Dr. Huff Rebuttal Report, Ex. 6 to Pl.'s MSJ Resp, ECF No. 31-6) (agreeing that the arrest caused Plaintiff's injuries, but noting that his resistance with the shopping cart corral may have contributed to their severity). Although Defendant highlights cases that explain extricating a suspect from a vehicle or twisting one's arm sometimes demonstrates only minimal force, the plaintiffs in those cases did not sustain substantial injury. *Cf. Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (plaintiff was handcuffed without injury); *Donovan v. Phillips*, 685 F. App'x. 611, 612–13 (9th Cir. 2017) (outnumbered officer used reasonable force by placing plaintiff in a control hold given plaintiff's refusal to stay in her

vehicle). Here, the severity of Plaintiff's injury could lead a reasonable jury to conclude that Defendant employed at least a moderate amount of force.

### 2. Government's Interest

In assessing the government's interest in the force used, courts consider the "*Graham* factors," including "the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (quoting *Graham*, 490 U.S. at 396). The *Graham* factors are non-exclusive, and the court may rely on additional considerations when appropriate. *Glenn*, 673 F.3d at 871.

Driving under the influence was the crime at issue, given that Defendant reasonably suspected Plaintiff of having committed the crime when applying the challenged force. *Cf. Graham*, 490 U.S. at 396-97. The Ninth Circuit has indicated both that driving under the influence is a serious crime, and that it is not serious. *Compare Pope v. Las Vegas Metro. Police Dep't*, 647 F. App'x 817, 820 (9th Cir. 2016) ("We have previously recognized that driving under the influence is a 'serious' crime."); *with Bryan v. MacPherson*, 630 F.3d 805, 828–89 (9th Cir. 2010) ("None of the offenses for which Bryan was cited or of which he was suspected [including a DUI] is inherently dangerous or violent, and as already discussed, Bryan posed little to no safety threat."). However, the cases suggest that if a person is merely suspected of driving under the influence, and there are no other objective indicia that the plaintiff posed a danger to the officers, then driving under the influence is not treated as a serious crime under *Graham*. *Id.*

Plaintiff's suspected driving under the influence was likely not a serious crime under *Graham*. Plaintiff's potential crime did not pose an inherent danger to Defendant. When Defendant arrived at the scene, Plaintiff was parked in his vehicle. And, when Defendant communicated with Plaintiff, he observed no indicia that Plaintiff was intoxicated. (*See* Bass

Dep. 52:6–13, Ex. 3 to Pl.'s MSJ Resp.). Accordingly, viewing the facts in the light most favorable to Plaintiff, his alleged DUI could be considered a non-serious offense.

Likewise, Plaintiff's painting of the facts indicates that he did not endanger the officers nor did he actively resist arrest or attempt to evade the officers. While Plaintiff was slow to respond to commands, he did not physically resist Defendant until after Defendant initially pulled Plaintiff from his vehicle. (*See* Officer Bass Dash Cam Video 2:49–3:11). Plaintiff began to comply with commands just before being apprehended, and to the extent he engaged in any resistance, the resistance was passive. (*Id.* 2:42–43); *Cf. Rice v. Morehouse*, __ F.3d __, 2021 U.S. App. LEXIS 6626, 2021 WL 853301 (9th Cir. Mar. 8, 2021) (describing plaintiff's refusal to follow officer commands as passive resistance); *see also Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (indicating that brief physical resistance, while not perfectly passive, does not support the use of significant force).

Additionally, a jury could conclude that Defendant did not reasonably fear that Plaintiff had a weapon before applying the challenged force. Defendant contends that because Harvey saw Plaintiff feeling around his center console and believed Plaintiff could have a weapon, Defendant also believed Plaintiff could have a weapon in his vehicle. (Bass Dep. 61:21–23, Ex. 3 to Pl.'s MSJ Resp., ECF No. 31-3). Nevertheless, the dispatch notes indicate, "NO WEAPON WAS SEEN," and Defendant admittedly conducted the stop in a manner inconsistent with the belief Plaintiff had a dangerous weapon. (*Id.* 44:16–45:25, 50:13–52:5); (CAD Notes, Ex. B to MSJ). And, when Plaintiff attempted to exit his vehicle consistent with Defendant's directive, Plaintiff had only his cellphone in hand, and Defendant believed the object was—in fact—a cell phone. (Officer Bass Dash Cam Video 2:42–46, Ex. F-3 to MSJ); (Bass Dep. 55:12–18, Ex. 3 to Pl.'s MSJ Resp). When Defendant ordered Plaintiff to drop his personal belongings, Plaintiff sat back into the driver's seat and raised his arms. (*Id.* 2:46–48). Defendant testified that Plaintiff's gesture led him to believe Plaintiff was only holding what

appeared to be a cell phone, and at no point after Plaintiff opened his door did he reach around for any other objects. (Bass Dep. 59:3–21, Ex. 3 to Pl.'s MSJ Resp). Immediately after the gesture, Defendant applied the challenged force despite Plaintiff's attempted compliance with the command to exit his vehicle. (Officer Bass Dash Cam Video 2:49–51). And, even though Plaintiff engaged in some passive physical resistance once Defendant initially applied the force, Plaintiff did not pose a danger to the officers while holding onto a shopping cart corral. Therefore, at the time of the challenged force, a reasonable jury could conclude that the Government had a minimal interest in applying force to Plaintiff beyond the force required to place Plaintiff in handcuffs.

### 3. Balancing

To complete its analysis, the court must balance the gravity of the intrusion against the Government's need for the intrusion. *Glenn*, 673 F.3d at 871. As a jury could find that the force used was at least moderate, and the Government had little interest in applying beyond a minimal amount of force, a jury could conclude that Defendant applied excessive force. Given that a jury could find for Plaintiff on the merits of his Fourth Amendment claim, the claim is only amenable to summary judgment if Defendant can demonstrate his entitlement to qualified immunity.

### ii. *Qualified Immunity*

Courts employ a two-step sequence to resolve government officials' qualified immunity defenses. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At step one, the court must decide whether a plaintiff has pleaded sufficient facts to "make out a violation of a constitutional right." *Id.* "Second, if the plaintiff has satisfied this first step, the court must decide whether the right was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 199 (2001)).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (citation omitted). While this analysis does not require a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

"Except in the rare case of an 'obvious' instance of constitutional misconduct . . . Plaintiffs must 'identify a case where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment.'" *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (internal modifications and emphasis original) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)). "In other words, Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these deputies in this case that their particular conduct was unlawful." *Id.* "To achieve that kind of notice, the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id.*

As the Court's preceding analysis demonstrates, Plaintiff has sufficiently shown a genuine dispute regarding Defendant's violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure. However, Plaintiff has not met his burden to show that Defendant's conduct was clearly unconstitutional at the time of the seizure. Plaintiff contends that he had a clearly established right to be free of anything more than "the least contact necessary" given that he was demonstrating passive resistance. (Pl.'s MSJ Resp. 13:10–20, 22:5–23). While Plaintiff correctly notes that the level of force permitted differs depending on whether a plaintiff is passively or actively resistant, he does not cite binding authority or a

consensus of courts from outside the jurisdiction that indicates an agitated and non-cooperative person suspected of driving under the influence has a clearly established right to be free from an officer forcefully pulling him from his vehicle. (*Cf.* 13:21–15:25). The Seventh Circuit case and unpublished Georgia district court case Plaintiff relies upon would not put a reasonable officer in Nevada on notice that Defendant's conduct was clearly unconstitutional. Outside of the two examples Plaintiff provides, he only cites to generalized propositions of law that cannot overcome a claim to qualified immunity.

To the contrary, the Ninth Circuit has previously considered a claim of excessive force wherein the officer yanked the non-resistant plaintiff's arm behind his back so forcefully that the plaintiff required rotator cuff surgery. *See Sharp*, 871 F.3d at 917. The Circuit explained, "[w]hile the degree of force here was significant, Deputy Anderson was entitled to qualified immunity because Plaintiffs have not offered anything other than general legal propositions which cannot clearly establish that Deputy Anderson's particular conduct was unlawful." *Id.*

Here, the Court finds that Plaintiff has not offered a case indicating that Defendant violated a clearly established constitutional right of Plaintiff. Rather, he directs the Court to broad legal principles and cases from other jurisdictions indicating that yanking an arrestee's arm may, depending on the facts and circumstances, rise to the level of unreasonable force. Therefore, as Plaintiff has not met his rebuttal burden to Defendant's qualified immunity defense, the Court grants Defendant summary judgment on Plaintiff's Fourth Amendment claim.

**B.     Battery**

Defendant seeks summary judgment on Plaintiff's battery claim. Defendant highlights that the standard for state law battery claims comprises the same reasonableness standard as a Fourth Amendment claim. (Def.'s MSJ 24:10–11) (citing *Vasquez-Brenes v. LVMPD*, 51 F. Supp. 3d 999, 1014 (D. Nev. 2014) (overruled on other grounds); *Ramirez v. City of Reno*, 925

F. Supp. 681, 691 (D. Nev. 1996)). Accordingly, he argues that because he used objectively reasonable force against Plaintiff, the Court should enter summary judgment in his favor. (*Id.* 24:19–21). He does not argue that he is entitled to any type of immunity under state law for the alleged battery. Additionally, federal qualified immunity does not extend to corollary tort claims arising under state law. *See Robinson v. Solano Cty.*, 278 F.3d 1007, 1013 (9th Cir. 2002) (affirming the district court's finding of qualified immunity as to plaintiff's constitutional claims, but reversing immunity finding for state law claims because "the officers' immunity under state law is narrower."); *see also Flores-Zelaya v. Las Vegas Metro Police Dep't*, No. 2:13-cv-01181-JAD-CWH, 2016 U.S. Dist. LEXIS 21052, 2016 WL 697782, at *13–*14 (D. Nev. Feb. 19, 2016) (indicating that statutory discretionary act immunity, not qualified immunity, applies to Nevada battery claims brought against public officers).[2]

The Court's preceding discussion explains that, viewing the facts in the light most favorable to Plaintiff, there is a dispute of fact regarding the reasonableness of the force Defendant employed. As the same reasonableness inquiry applies to Plaintiff's battery claim, the battery claim is not fit for summary dismissal. Therefore, the Court denies summary judgment as to Plaintiff's battery claim.

### C. Motion to Expedite Trial

Plaintiff requests that the Court expedite trial given Plaintiff's advanced age and underlying medical conditions. (*See generally* Mot. Expedite, ECF No. 26). He seeks a firm trial date in either May or June of 2021. (*Id.* 5:14–15). Defendant does not oppose a trial setting in June "subject to the condition that the Court decide Officer Bass's pending Motion for Summary Judgment . . . prior to the date of trial, preferably at least 30 days prior. . . ." (Def.'s Mot. Expedite Resp. 2:2–6, ECF No. 29). The Court, however, has no availability in an

---

[2] Defendant raises a discretionary act immunity defense against Plaintiff's negligence claim, but not Plaintiff's other state law claims. (MSJ 22:24–23:23).

upcoming June trial stack. Therefore, the Court will grant Plaintiff's request for an expedited trial, but at a mutually agreeable time no earlier than July.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 27), is **GRANTED in part** and **DENIED in part** consistent with the forgoing.

**IT IS FURTHER ORDERED** that the Court **GRANTS in part** and **DENIES in part** the Motion to Expedite Trial, (ECF No. 26). The Court **GRANTS** Plaintiff's request to expedite trial. Due to lack of availability, the Court **DENIES** Plaintiff's request to schedule a firm trial date for May or June.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Shorten Time, (ECF No. 38), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that within thirty (30) days of entry of this Order, the parties shall file a Proposed Joint Pretrial Order suggesting mutually agreeable trial dates no earlier than July.

Dated this  24  day of May, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT